FIRST TRUST JOINT STOCK LAND BANK of Chicago, Appellant, v. CORYDON STATE BANK, Appellee.

No. 41901.

FEBRUARY 13, 1934.

Valentine & Valentine, R. M. Uhl, and W. L. Cohrs, for appellant.

Bracewell, Murrow & Poston, for appellee.

ANDERSON, J.—This is an action to foreclose a real estate mortgage and for the appointment of a receiver. The action was commenced in the district court of Wayne county, Iowa, August 10, 1931. Decree was entered November 6, 1931, and the question as to the appointment of a receiver was continued until after the execution sale. The execution sale resulted in a deficiency judgment of $600. The Corydon State Bank was made a defendant in the foreclosure action and claims the rents for the years 1931 and 1932, under an assignment of leases and rent notes from the title holder prior to the commencement of the foreclosure proceedings. The controversy now presented is wholly between the plaintiff-appellant and the Corydon State Bank, defendant-appellee, and the sole question is one of fact, as to whether the Corydon Bank was in fact the

assignee and holder of the leases and notes in question at the time of the commencement of the foreclosure proceeding. The plaintiff's mortgage contained provisions pledging the rents and profits and providing for the appointment of a receiver. It was not recorded nor indexed as a chattel mortgage. There was an order and decree in the lower court finding that the Corydon Bank was the assignee of the leases and rent notes involved, and denied the appointment of a receiver, and denied plaintiff's right to the rents and profits of the mortgaged real estate during the term of the leases. From such finding and order the plaintiff prosecutes this appeal.

There is a question raised by the appellee that one of the principal defendants liable for the payment of the deficiency judgment was not insolvent, and that the deficiency could have been collected from her; and that by reason thereof the plaintiff is not entitled to the appointment of a receiver. The facts in reference to this are very much involved and in dispute, and in view of the fact that the determination of the other question, that is, as to the validity of the assignment of the leases and rent notes to the Corydon Bank, will be determinative of this appeal, we refrain from further comment upon or decision of the insolvency question.

On the question as to the assignment of the leases and rent notes it appears from the evidence that C. C. Clark, the principal defendant and title holder of the mortgaged real estate, had, immediately prior to the instance which we will detail later, entered into leases with tenants involving other lands owned by him in which mortgage foreclosure proceedings were imminent, and assigned such leases as collateral security to other indebtedness, and that he was familiar with such procedure and had knowledge that such procedure would defeat the mortgagee in efforts to appropriate rents and profits in the event of foreclosure. The evidence discloses that one T. W. Miles, an attorney and director in the Corydon State Bank, had talked to the said C. C. Clark on several occasions about leasing the land and assigning the leases to the Corydon State Bank as security for his (Clark's) indebtedness to said bank approximating some $3,500. Miles, as a witness, testified that he probably had had a dozen such conversations with the mortgagor, C. C. Clark, in reference to the matter. That following these conversations Clark came to the office of Miles and the leases and notes in controversy were prepared and signed by Mr. Clark. Clark then took them out in the country and obtained the signatures of the lessees, and then

brought them back and delivered them to Miles. Miles testified that the leases and notes were not left with him merely for safekeeping, but that there was a definite understanding and agreement between Clark and himself that they were to be delivered at once to the Corydon State Bank as collateral security to Clark's indebtedness, and that in accordance with such understanding and agreement Miles did deliver the said leases and notes to the Corydon State Bank immediately; that they were marked as collateral security and were held by said bank from that date. Miles further testified that he had many conversations with Clark after the events we have detailed, and before Clark went into bankruptcy, over his (Clark's) financial condition, and of the fact that these leases and notes had been delivered to the Corydon State Bank, and that Mr. Clark never objected nor raised any question as to the delivery and assignment of the leases and notes to the Corydon Bank. Mr. Miles was emphatic in testifying that he wanted it understood that the notes and leases were delivered to the bank under the direction and by specific agreement with Mr. Clark. It appears without dispute, both from the testimony of the cashier of the Corydon State Bank and from that of C. C. Clark, that, about two months after the notes and leases were delivered to the Corydon Bank, Mr. Clark called at the bank on some other business and was shown the leases and notes in question, and advised that the bank was holding them as collateral, and that he made no objection to the situation at that time. The testimony also shows that, after Clark was advised by the Corydon Bank that it held the notes and leases, he filed a petition in bankruptcy in which he did not list the leases and notes as a part of his assets. He did later, however, file an amended schedule in the bankruptcy proceedings in which he listed the leases and notes in question, but the trustee in bankruptcy never attempted to realize upon said notes and leases and waived any right so to do. The notes and leases were not assigned to the Corydon Bank by an indorsement or any written instrument. Clark denied the testimony of Mr. Miles as to the agreement to assign and deliver the leases and notes to the Corydon Bank, and said that the omission of the notes and leases from his bankruptcy schedule was an oversight. He also testified, however, that he never made any demand on Mr. Miles or the bank for the delivery of the notes and leases to himself; that, while he left them with Mr. Miles for safe-keeping, he never asked to have them back, and that, when he found out that

they were in the bank, he did not tell the bank that they had been left with Mr. Miles for safe-keeping, or that the bank had no right to them. Clark also testified that he had made similar leases upon another tract of land, and that such leases had been delivered to another bank as collateral for other indebtedness, so that he was familiar with such methods.

Under the facts as disclosed by the foregoing, which is practically all of the testimony pertinent to the issue, we are constrained to hold that the trial court was right in its finding that the leases and notes in controversy were the property of the Corydon State Bank, and that the plaintiff was not entitled to the appointment of a receiver nor to the rents and profits accruing under the leases assigned to and held by the Corydon Bank. This conclusion is supported by the testimony of Mr. Miles, and by the other facts and circumstances shown in the record. It is supported by the fact that Clark had full knowledge that the leases and notes involved were held by the bank as collateral security, and that he made no claim that the bank was not entitled thereto; that he made no demand at any time, either upon the bank or Mr. Miles for the delivery to him of the leases and notes. It is further supported by the fact that he made no reference as to his ownership of the leases and notes in his bankruptcy schedule filed at a time when he knew the leases and notes were in the possession of the Corydon Bank. A written indorsement or assignment of the notes and leases by Clark was not necessary, if they were delivered with such intention, and, under this record, we hold that the leases and notes in question were procured, executed, and delivered to the Corydon Bank with the understanding and intention that such delivery should constitute an assignment, and that the Corydon Bank should hold the same as collateral security to the indebtedness of C. C. Clark to the said bank. We see no reason for disturbing the finding and judgment of the trial court, and such finding and judgment is therefore affirmed.— Affirmed.

CLAUSSEN, C. J., and EVANS. STEVENS, KINDIG, MITCHELL, and KINTZINGER, JJ., concur.